## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NSX OPERATING CO., LLC,

    PLAINTIFF,

    V.

SPRING COATING SYSTEMS-
AMERICAS CORP. (D/B/A SPRING
COATING SYSTEMS USA AND
SPRING COATING SYSTEMS),

    DEFENDANT.

CIVIL ACTION NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NSX Operating Co., LLC ("NSX"), by and through its attorneys,

states as follows for its Complaint against Defendant Spring Coating Systems-

Americas Corp. (d/b/a Spring Coating Systems USA and Spring Coating Systems)

("Defendant"):

## THE PARTIES

1.    NSX is a corporation organized under the laws of the state of

Delaware and has its principal place of business at 1184 Logan Circle NW,

Atlanta, GA 30318.

2.    On information and belief, Defendant Spring Coating Systems-

Americas Corp. (d/b/a Spring Coating Systems USA and Spring Coating Systems)

is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business at 1610 Manning Blvd., Suite A, Levittown, PA 19057.

3.      On information and belief, "Spring Coating Systems" is a name registered under the laws of the Commonwealth of Pennsylvania and is owned by Spring Coating Systems-Americas Corp. Spring Coating Systems has its principal place of business at 1610 Manning Blvd., Suite A, Levittown, PA 19057.

## JURISDICTION AND VENUE

4.      This action arises under the Patent Laws of the United States of America, 35 U.S.C. § 1 et seq.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because this is a civil action arising under the Patent Act.

6.      This Court has personal jurisdiction over Defendant because Defendant is incorporated in the Commonwealth of Pennsylvania.

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is incorporated in the Commonwealth of Pennsylvania and resides in this District.

## THE PATENTED TECHNOLOGY

8.    Flexography is a type of relief printing that uses flexible sheets of photopolymer to transfer an image onto a substrate such as plastic film, bags, or paper.

9.    To create a relief image on flexographic plates, in the flexography process, uncured photopolymer is exposed to ultra-violet light through a mask that blocks selected portions of the photopolymer from the UV light. Those UV-light-exposed potions of the photopolymer crosslink, or solidify, and the remaining uncured portions of the photopolymer needs to be removed, or "washed," in order for the image to be usable.

10.    Flexographic platewash solvents dissolve and remove the uncured photopolymer portions of the flexographic plate.

11.    Ideal flexographic platewash solvents have a number of qualities. These include fully dissolving the uncured portions of the flexographic plate while resisting absorbing into and swelling the cured portion of the flexographic plate, which results in a cleaner final image. Ideal flexographic platewash solvents are also non-hazardous, easy to recycle, and have low odor intensity.

12.     Plaintiff NSX, founded in 1992, is an innovative leader in the flexographic platewash solvent industry, and it is the largest manufacturer and recycler of platewash solvents in the United States.

13.     NSX is the owner of United States Patent No. 9,897,921 ("the '921 patent") entitled *Compositions Comprising Mineral Spirits and Methods Related Thereto*, which was invented by NSX's President and Co-founder, Jon-Eric Bonney. The United States Patent and Trademark Office duly and legally issued the '921 patent on February 20, 2018. A true and correct copy of the '921 patent is attached hereto as Exhibit A.

14.     The '921 patent represents a leap forward in flexographic platewash solvent technology. Though before the time of the '921 patent's invention, other flexographic platewash solvents were known, they had significant problems. For example, prior art solvents had intense odors. '921 patent at 1:45–2:5. Specifically, compositions with high aromatic-containing components exhibited distinct and unpleasant odors.

15.     Accordingly, the '921 patent provides an innovative solution to these problems by creating a flexographic platewash solvent with low odor intensity comprising non-hazardous components. '921 patent at 2:6–11. Surprisingly, the innovative solvents have significant improvements over the prior art, for example,

4

including being able to develop plates faster, faster drying times, producing a better quality image, and producing lower volatile organic compound emissions. '921 patent at 15:2–9. Additionally, the innovative formulations prevent polymer build-up on flexographic plate wash brushes and on other mechanical components exposed to dissolved polymer, resulting in a cleaner plate processor. '921 patent at 15:6–11.

16.    Mr. Bonney, the '921 patent inventor, discovered that these innovative solvents can be made from a novel combination of mineral spirits having certain aromatic properties, diisopropylbenzene, and/or at least one alcohol. '921 patent at 2:14–19.

17.    For example, claims 10, 11, and 12 of the '921 patent recite:

**Claim 10.**    A composition comprising:

(a) mineral spirits having an aromatic content of less than 2 wt %;

(b) diisopropylbenzene; and

(c) at least one alcohol, wherein the at least one alcohol is selected from tetrahydrofurfuryl alcohol, 2-ethoxy-ethanol, benzyl alcohol, terpineol, cyclohexanol, methyl cyclohexanol, hexyl alcohol, heptyl alcohol, 2-butoxyethanol, and 2-(2-butoxyethoxy) ethanol,

wherein dipropylene glycol methyl ether is absent.

**Claim 11.**   The composition of claim 10, wherein the mineral spirits have an aromatic content of less than 1 wt %.

**Claim 12.**   The composition of claim 10, wherein the mineral spirits have an aromatic content of less than 0.1 wt %.

18.    After discovering this improved solvent with a low odor and better performance qualities, NSX began selling, and still sells, low odor flexographic platewash solvents that embody the invention claimed in the '921 patent.

19.    NSX's low odor flexographic platewash solvents are commercially successful.

## DEFENDANT'S INFRINGEMENT OF THE '921 PATENT

20.    On information and belief, only after NSX secured the '921 patent did Defendant start making and selling a line of flexographic platewash solvents dubbed "ECOWASH."

21.    Defendant advertises the ECOWASH line as being the "latest generation of environmentally friendly flexographic plate washout solutions." Exhibit B.

22.    Like the '921 patent describes its innovative solvents' low odor, Defendant advertises ECOWASH as having "low odor." *Id.*

23.    Like the '921 patent describes its innovative solvents' non-hazardous components, Defendant advertises ECOWASH as a "safer solvent." *Id.*

24.    Like the '921 patent describes its innovative solvents' faster drying times, Defendant advertises ECOWASH as having "faster drying times." *Id.*

25.    Like the '921 patent describes its innovative solvents' ability to create a better quality image in flexographic printing, Defendant advertises ECOWASH as providing "better definition and less dot loss." *Id.*

26.    On information and belief, Defendant advertises these and other properties of ECOWASH because Defendant is copying the formulations disclosed in the '921 patent.

27.    On information and belief, Defendant's ECOWASH contains: (1) Isopar L—which in its current commercial form is an odorless mineral spirit having an aromatic content of less than 0.1 wt %; (2) diisopropylbenzene; and (3) benzyl alcohol. On information and belief, Defendant's ECOWASH does not contain dipropylene glycol methyl ether.

28.    On information and belief, Defendant's ECOWASH contains about 49 wt % mineral spirits.

29.    On information and belief, Defendant's ECOWASH contains about 20 wt % benzyl alcohol.

30.     On information and belief, Defendant's ECOWASH contains about 28 wt % diisopropyl benzene.

31.     On or around February 18, 2025, NSX communicated to Defendant that ECOWASH infringes the '921 patent and demanded that Defendant cease and desist from its continued willful infringement of the '921 patent. On information and belief, Defendant continues to willfully infringe the '921 patent.

## COUNT I: DIRECT INFRINGEMENT OF THE '921 PATENT

32.     NSX re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

33.     Defendant, in violation of 35 U.S.C. § 271(a), directly infringed and continues to directly infringe at least claims 11, 12, 14, 16, 17, and 20 of the '921 patent, literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States its ECOWASH solvent.

34.     Defendant's infringement of the '921 patent is damaging and will continue to damage NSX.

35.     Defendant's continuing infringement of the '921 patent will irreparably harm NSX, and Defendant's infringement will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

36.    On information and belief, Defendant's infringement of the '921 patent is willful, justifying an award of increased damages and making this an exceptional case entitling NSX to reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT II: INDIRECT INFRINGEMENT OF THE '921 PATENT

37.    NSX re-alleges and incorporates by references the allegations in the preceding paragraphs.

38.    Defendant, in violation of 35 U.S.C. § 271(b), indirectly infringed and continues to indirectly infringe at least claims 11, 12, 14, 16, 17, and 20 of the '921 patent, literally or under the doctrine of equivalents, by actively inducing others to use, make, sell, offer for sale and/or import ECOWASH in an infringing manner, knowing such acts would constitute infringement of the '921 patent. Defendant's customers who use ECOWASH in accordance with Defendant's instructions infringe at least claims 11, 12, 14, 16, 17, and 20 of the '921 patent, in violation of 35 U.S.C. § 271(a).

39.    On information and belief, Defendant actively instructs, encourages, and/or aids such infringement through various activities, including its advertising of ECOWASH, promotional material, product documentation, and/or technical support of customers using ECOWASH.

40.     Defendant's indirect infringement of the '921 patent is damaging and will continue to damage NSX.

41.     Defendant's continuing indirect infringement of the '921 patent will irreparably harm NSX, and Defendant's indirect infringement will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

42.     On information and belief, Defendant's indirect infringement of the '921 patent is willful, justifying an award of increased damages and making this an exceptional case entitling NSX to reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

43.     Pursuant to Federal Rule of Civil Procedure 38(b), NSX respectfully requests a trial by jury on all claims and issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, NSX respectfully requests the following relief:

A.     A judgment that Defendant has directly and/or indirectly infringed one or more claims of the '921 patent under at least 35 U.S.C. §§ 271(a) and/or (b);

B.     A permanent injunction prohibiting Defendant, and all persons or entities acting in concert with Defendant, all parent and subsidiary corporations

and affiliates, and their assigns and successors in interest from continuing acts of infringement of the '921 patent;

C.     An award to NSX of damages adequate to compensate NSX for Defendant's acts of patent infringement, together with prejudgment and post-judgment interest under 35 U.S.C. § 284 and other permitted costs, expenses, and disbursements;

D.     A declaration or order finding that Defendant's infringement is willful and an award to NSX of all other damages permitted by 35 U.S.C. § 284, including enhanced damages up to three times the amount of compensatory damages found;

E.     The entry of a judgment that this is an exceptional case and awarding to NSX its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285;

F.     Such other and further relief in law or equity as the Court deems just and appropriate.

Dated: April 28, 2025

Respectfully submitted,

*/s/ Noah S. Robbins*
Noah S. Robbins
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
robbinsn@ballardspahr.com

11

D. Brian Shortell, Ph.D.
*(pro hac vice forthcoming)*
BALLARD SPAHR LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (678) 420-9300
Fax: (678) 420-9301
shortellb@ballardspahr.com

Samhitha Medatia
*(pro hac vice forthcoming)*
BALLARD SPAHR LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (678) 420-9300
Fax: (678) 420-9301
medatias@ballardspahr.com

*Counsel for Plaintiff NSX Operating Co., LLC .*