**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NSX OPERATING CO., LLC,<br><br>PLAINTIFF AND COUNTERCLAIM-DEFENDANT,<br><br>V.<br><br>SPRING COATING SYSTEMS-AMERICAS CORP. (D/B/A SPRING COATING SYSTEMS USA AND SPRING COATING SYSTEMS),<br><br>DEFENDANT AND COUNTERCLAIM-PLAINTIFF. | CIVIL ACTION NO.: 2:25-CV-02129-GAW<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF NSX OPERATING CO., LLC'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I. Introduction ... 1

II. "Mineral Spirts" and "Odorless Mineral Spirits" Are Not Indefinite at Least Because SCS Admits the Terms Are Defined in the '921 Patent ... 1

A. NSX Does Not Use "Mineral Spirits" and "Odorless Mineral Spirits" Interchangeably ... 3

B. Claim Differentiation Does Not Render "Mineral Spirits" or "Odorless Mineral Spirits" Indefinite ... 4

III. The Court Should Not Adopt SCS's Alternative Definition Because it Rejects *Phillips* and Is Grounded in a Fundamental Misunderstanding of the Science ... 4

IV. The Court Should Reject SCS's Proposals for "About 49 wt %," "About 28 wt %," and "About 20 wt %," Because they Violate the Bedrock *Phillips* Principle Against Imputing Limitations from the Specification into the Definition of a Claim ... 7

V. SCS Makes No Indefiniteness Argument ... 10

VI. Conclusion ... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alnylam Pharms, Inc. v. Moderna, Inc.*,
138 F.4th 1326 (Fed. Cir. 2025) ....................2

*Britax Child Safety, Inc. v. Nuna International B.V.*,
No. 17-cv-2724, 2019 WL 7161687 (E.D. Pa. Dec. 23, 2019)....................10

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002)....................2

*Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*,
38 F. Supp. 3d 589 (E.D. Pa. 2014) ....................3

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006)....................4

*Energizer Holdings, Inc. v. International Trade Com'n*,
435 F.3d 1366 (Fed. Cir. 2006)....................3

*Exigent Tech., Inc. v. Altrana Sols., Inc.*,
442 F.3d 1301 (Fed. Cir. 2006)....................5

*Kaufman v. Microsoft Corp.*,
34 F.4th 1360 (Fed. Cir. 2022) ....................7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)....................7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................2, 5, 7

# TABLE OF EXHIBITS

| Exhibit Number | Description |
|---|---|
| 1 | Declaration of Rustom S. Kanga, Ph.D. In Support of NSX's Opening Claim Construction Brief |
| 2 | '921 patent |
| 3 | NSX_00000278, Generic Hydrocarbon Solvents: A Guide to Nomenclature |
| 4 | NSX_00000288, ASTM International Standard Specification for Mineral Spirits |
| 5 | Defendant SCS's Responses to Plaintiff NSX's First Set of Interrogatories (Nos. 1–10) |
| 6 | NSX_00000291, Isopar L Fluid Product Safety Summary |
| 7 | SCS_00000089, Isopar L Safety Data Sheet |
| 8 | NSX_00000264, ECOWASH Safety Data Sheet |
| 9 | EXXON_00000001, Declaration of Raf De Meester |
| 10 | EXXON_00000023, Metalworking Fluids Distributor Workshop |
| 11 | EXXON_00000019, Fluid Facts Regulatory Information |
| 12 | SCS_00000712 |
| 13 | NSX_00000110, Response to Non-Final Office Action on August 21, 2015 |
| 14 | NSX_00000408, *Chemistry*, Sienko, Michell J. & Plane, Robert A. (5th Ed. 1976) |
| 15 | NSX_00000508, *Organic Chemistry*, Solomons, T.W. Graham (Revised Printing, 1978) |
| 16 | Excerpted Transcript of the Deposition of Rustom S. Kanga on January 14, 2026 |

## I. Introduction

NSX's claim construction proposal applies *Phillips* and adopts the express definitions of "mineral spirits" and "odorless mineral spirits" from U.S. Patent No. 9,897,921 ("the '921 patent"). Further, NSX proposes the plain and ordinary meaning of the terms "about 49 wt %," "about 28 wt %," and "about 20 wt %," consistent with the many courts, including the Federal Circuit, that have construed similar terms before.

In contrast, SCS's proposals and arguments rely on incorrect science and law. For "mineral spirits" and "odorless mineral spirits," SCS argues that because both are used in the '921 patent—despite their separate definitions—they must be indefinite. This is not the law, and SCS fails to even engage with the lexicography in the '921 patent. SCS's alternative proposal for "mineral spirits" fails to follow any *Phillips* rules, and rests on a misunderstanding of organic chemistry, the science of carbon-based material. SCS believes that "organic" (a term not in the patent's definitions) is somehow distinguished from "synthetic," and that organic compounds must be "natural." In the same way that "aromatic" in the chemistry context does not merely mean having an aroma,[1] "organic" in the chemistry context does not mean pesticide-free or natural—it refers to carbon-based chemistry.

Finally, SCS's arguments on the weight percent terms are arbitrary and fail to engage with the weight of contrary case law finding plain and ordinary meaning sufficient.

## II. "Mineral Spirts" and "Odorless Mineral Spirits" Are Not Indefinite at Least Because SCS Admits the Terms Are Defined in the '921 Patent

As an initial matter, SCS admits that the '921 patent **defines** the terms mineral spirits and

---

[1] "Aromatic hydrocarbon" refers to a circular carbon-hydrogen ring that has a planar structure and shared double bonds. Pl.'s Opening Claim Construction Br., Ex. 1 at ¶ 64, ECF No. 43-1 (Kanga Decl.).

odorless mineral spirits: "Here, based upon the '921 Patent's own ***definitions*** of [mineral spirits and odorless mineral spirits] and their usage in the '921 Patent's claims, as well as the Applicant's own statements during the '921 Patent's prosecution history, the two terms cannot be rendered distinct." Def.'s Opening Claim Construction Br. at 9, ECF No. 41 (emphasis added). Despite this admission, SCS fails to engage with the definition of mineral spirits or odorless mineral spirits or explain why the definition does not control.

Instead, SCS argues that the terms "mineral spirits" and "odorless mineral spirits" are indefinite for two reasons: (1) NSX allegedly uses the terms interchangeably despite NSX clearly defining them as **not** interchangeable and (2) claim differentiation. NSX has consistently described mineral spirits and odorless mineral spirits much like how a rectangle and square are not interchangeable: all odorless mineral spirits are mineral spirits, but not all mineral spirits are odorless. *See, e.g.*, ECF No. 43 at 21 n. 5. This use does not render the terms indefinite. Additionally, the one paragraph SCS devotes to its claim differentiation argument also fails because the terms have different definitions in the '921 patent, meaning that the claims referencing the terms have different scope. *Compare* ECF No. 43-2 (the '921 patent) at 4:46-55 *to id.* at 4:56-61. Again, this fails to render the terms indefinite.

As SCS itself admits, this case "requires no special application" of the *Phillips* principles, which dictate that when a patentee acts as a lexicographer, that definition governs. SCS has given no rational reason to deviate from the explicit definitions provided in the '921 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)); *Alnylam Pharms, Inc. v. Moderna, Inc.*, 138 F.4th 1326, 1333 (Fed. Cir. 2025).

### A. NSX Does Not Use "Mineral Spirits" and "Odorless Mineral Spirits" Interchangeably

NSX agrees that during prosecution of the '921 patent, it accurately stated that "mineral spirits are completely distinct from odorless mineral spirits." Ex. 13 at NSX_00000119 (Response to Non-Final Office Action); *see* ECF No. 41 at 8–9. However, a more fulsome citation of the prosecution history reveals that, consistent with the definition in the '921 patent's specification, the difference between the two terms depends on aromatic hydrocarbon concentration:

> Moreover, in the knowledge of a person of ordinary skill in the art, the cited reference is undermined by knowledge that mineral spirits are completely distinct from odorless mineral spirits. Most notably, mineral spirits contain up to about 22% aromatic content. Conversely, odorless mineral spirits contain a significantly reduced quantity of aromatic hydrocarbons, up to only 0.25%. **Therefore, it would be understood by one of ordinary skill in the art that mineral spirits are not interchangeable with odorless mineral spirits**.

Ex. 13 at -119 (emphasis added). SCS argues that "paradoxically," despite mineral spirits and odorless mineral spirits being distinct, claim 18 and claim 20 use the terms "interchangeably." ECF No. 41 at 9. This is not true. The antecedent basis for the "mineral spirits" referenced in claim 20 are the odorless mineral spirits recited in claim 18:

| | |
|---|---|
| 18. A composition comprising:<br>(a) **odorless mineral spirits** having an aromatic content of less than 1 wt % . . . | 20. The composition of claim 18, wherein the **mineral spirits** are present in an amount of about 49 wt % . . . |

ECF No. 43-2 at claims 18 and 20 (emphasis added).

A POSITA reading claim 20 understands that the scope of claim 20 covers the mineral spirits in claim 18—which must be odorless mineral spirits—in amount of about 49 wt %. That is an obvious and clear read. And even if the Court finds that it is not an obvious and clear read of the claim, a claim lacking a clear antecedent basis that "nonetheless has a reasonable ascertainable meaning must be decided in context" and is still not indefinite. *Energizer Holdings,*

*Inc. v. International Trade Com'n*, 435 F.3d 1366, 1370–71 (Fed. Cir. 2006) (finding "anode gel" was the proper antecedent basis for "said zinc anode" based on implication and context); *see also Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP,* 38 F. Supp. 3d 589, 617 (E.D. Pa. 2014) (holding that "first video signals" and "second video signals" provided antecedent basis for "the video content signals" by implication).

### B. Claim Differentiation Does Not Render "Mineral Spirits" or "Odorless Mineral Spirits" Indefinite

The Court should reject the one paragraph SCS devotes to its argument that claim differentiation renders the '921 patent invalid for indefiniteness.

First, as noted, SCS admits that the '921 patent has its "own definitions" of mineral spirits and odorless mineral spirits. ECF No. 41 at 9 ("Here, based upon the '921 Patent's **own definitions** of [mineral spirits and odorless mineral spirits] . . ."). Yet SCS fails to apply these definitions of the terms.

Second, there is no claim differentiation issue with respect to the '921 patent. As noted above, the antecedent basis for the "mineral spirits" of claim 20 are the recited odorless mineral spirits. Dependent claim 20 is thus narrower than claim 18, because the recited mineral spirits must be present in "an amount of about 49 wt %," a requirement that is not present in claim 18. There is simply no claim differentiation issue.

Third, even the case that SCS cites confirms that "claim differentiation is a guide, not a rigid rule" and that the "specification is the single best guide to the meaning of a claim term." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1378, 1381 (Fed. Cir. 2006) (citations omitted). Here, the specification clearly defines both terms, and there is no reason to deviate. Accordingly, the Court should adopt NSX's claim construction proposal.

## III. The Court Should Not Adopt SCS's Alternative Definition Because it Rejects *Phillips* and Is Grounded in a Fundamental Misunderstanding of the Science

SCS's alternative proposal for "mineral spirits" is a "natural, non-synthetic liquid comprising aliphatic and/or aromatic non-isoparaffinic, C7-C12 hydrocarbons with an aromatic content no less than 0.2 wt %." ECF No. 41 at 8. This proposal is neither the plain and ordinary meaning of the term as it would be understood by a POSITA nor a definition from the '921 patent specification. Therefore, SCS's definition must be rejected over the definition NSX adopts from the '921 patent. *Phillips*, 415 F.3d at 1316 (when a patentee acts as lexicographer, that definition governs). SCS's position is a clear attempt to avoid liability by attempting to carve out its use of Isopar® L from the claim scope.[2]

As an initial matter, SCS does not even attempt to justify why mineral spirits should be limited to "non-isoparaffinic" hydrocarbons. Isoparaffinic hydrocarbons are aliphatic hydrocarbons that are branched (as opposed a straight-chain configuration):



ECF No. 43-1 at ¶ 72 (isooctane). There is no justification in the '921 patent to exclude isoparaffinic branched-chain hydrocarbons from the scope of "mineral spirits." *Id.* Indeed, the ASTM D235-02, the International Standard Specification Designation, contemplates certain

[2] While SCS argues that it is appropriate for the Court to consider the Accused Product—here, Isopar® L-containing ECOWASH—when determining "what aspects of a claim to construe," there remain **no** disputes over which "aspects" of the claims require construction here. *Exigent Tech., Inc. v. Altrana Sols., Inc.*, 442 F.3d 1301, 1310 n.10 (Fed. Cir. 2006). And the case that SCS itself cites to confirms that a "claim is construed in the light of the claim language . . . *not* in light of the accused device." *Id.* (citations omitted; emphasis in original).

mineral spirits having "approaching 100%" isoparaffinic content. *Id.* at ¶ 73; ECF No. 43-4 (NSX_00000288) at -289, note C.

Next, as SCS admits, its proposal for including "natural, non-synthetic liquid" stems from the '921 patent's "focus . . . on an organic solvent mixture." In this context, "organic" means carbon-based,[3] not natural or non-synthetic as sometimes used in the food-marketing context. In the context of mineral spirits, it is not clear what "natural" even means. ECF No. 43-1 at ¶ 71. Moreover, mineral spirits are hydrotreated/hydrocracked, making them "synthetic," so calling mineral spirits "non-synthetic" goes against industry understanding. *Id.* Further, the documents SCS cites from ExxonMobil confirm that Isopar® L is a mineral spirit because ExxonMobil markets it to buyers looking to replace generic mineral spirits with ones having particular properties. *Id.* at ¶¶ 82–83. Finally, SCS admits that if any extrinsic evidence "contradict[s] any definition found in or ascertained by a reading of the patent documents[,]" the court must disregard that evidence in favor of the intrinsic support. ECF No. 41 at 6. Under SCS's *own reasoning*, therefore, the Court should disregard the contradictory extrinsic evidence in favor of the definitions of mineral spirits and odorless mineral spirits in the '921 patent. ECF No. 43-2 at 4:46–61.

Finally, nothing supports SCS's arbitrary narrowing of the construction of mineral spirits

---

3 https://en.wikipedia.org/wiki/Organic_chemistry ("Organic chemistry is a subdiscipline within chemistry involving the scientific study of the structure, properties, and reactions of organic compounds and organic materials, i.e., matter in its various forms that contain carbon atoms."); Ex. 14 at NSX_00000421 (*Chemistry*, Sienko, Michell J. & Plane, Robert A. (5th Ed. 1976) ("Carbon and hydrogen form a vast variety of molecules which are the basis of organic compounds."); Ex. 15 at NSX_00000530 (*Organic Chemistry*, Solomons, T.W. Graham (Revised Printing, 1978)) ("Organic chemistry is the chemistry of the compounds of carbon."); Ex. 16 at 14:19–25 (Kanga Dep.) (" . . . . But basically, organic chemistry is the chemistry of carbon, hydrogen systems, bonds.").

to having aromatic content "no less than 0.2 wt %." SCS's argues, incorrectly, that both claim 12 and claim 18 recite mineral spirits and odorless mineral spirits, respectively, having an aromatic content of "less than 0.1 wt %." ECF No. 41 at 11. This is wrong. Claim 18 recites "odorless mineral spirits having an aromatic content of less than 1 wt %" not "0.1 wt %." ECF No. 43-2 at claim 18. But even if claim 18 recited less than 0.1 wt %, SCS does not explain how a recitation of less than 0.1 wt % informs its 0.2 wt % proposal. In any event, the proposal is also wrong because the definition of mineral spirits already has a reference to aromatic content: "maximum content of 25 % of C7 to C12 aromatic hydrocarbons." ECF No. 43-2 at 4:52–53; *see also id.* at 5:39–57 (stating that in different aspects of the invention, the mineral spirits have an aromatic content of as high as less than 10 wt % and as low as less than 0.1 wt %). A definition that excludes a preferred embodiment is "rarely, if ever correct." *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372 (Fed. Cir. 2022). The claims also contain various limitations to different aromatic content for mineral spirits, and there would be no reason to recite those limitations if "mineral spirits" inherently included that limitation. *See, e.g.*, ECF No. 43-2 at claim 10 (less than 2 wt %), claim 11 (less than 1 wt %), claim 12 (less than 0.1 wt %); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (dependent claims adding a "pressure jacket" meant independent claim did not necessarily require one); *see also Phillips*, 415 F.3d at 1314 ("steel baffles" means that "baffles" are not inherently made of steel).

**IV. The Court Should Reject SCS's Proposals for "About 49 wt %," "About 28 wt %," and "About 20 wt %," Because they Violate the Bedrock *Phillips* Principle Against Imputing Limitations from the Specification into the Definition of a Claim**

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (citations omitted). The Federal Circuit has repeatedly warned against confining the claims to the embodiments in the specification. *Id.* at 1323. The "line between construing terms and importing limitations can

be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.*

SCS's proposal—to arbitrarily limit the cited weight percentages to +/- 0.5 wt %—is not supported by plain and ordinary meaning, the claims, or even SCS's own understanding of the terms. The only argument SCS can make is to violate *Phillips* and impute limitations it derives from the specification that do not belong in the claim construction. SCS cites sections of the '921 patent's specification that state in "a further aspect," the three components "are present in an amount of about" different listed percentages that step one-by-one. ECF No. 41 at 13–14 (citing the '921 patent at 6:6–23 (mineral spirits); 7:8–25 (diisopropylbenzene); 7:53–8:2 (benzyl alcohol)). In SCS's view, this limitation from the specification means that the "about" weight percent terms must arbitrarily mean halfway between each of the listed percentages. This is wrong for many reasons.

First, SCS's proposal ignores the plain and ordinary meaning of the claims, violating *Phillips*. Measured values are reported to the significant digit. ECF No. 43-1 at ¶¶ 110, 117, 124. Because the terms at issue here are reported to the "ones" unit, that assumes a tolerance *at least* to that unit. *Id.* at ¶¶ 110. So, the plain and ordinary meaning of 49 wt %—without the modifier "about"—already includes 48 wt % to 50 wt %. *Id.* Adding "about" signifies to a POSITA that additional tolerance is allowed in the measurement, so SCS's proposal of +/- 0.5 wt % is wrong as a starting point.

Second, SCS again violates *Phillips* by selectively relying on statements in the '921 patent for the "about" terms to impute a narrower construction than the plain and ordinary meaning. SCS's logic is internally inconsistent because while it attempts to rely on the statements about the relative weight percentages for mineral spirits, DIPB, and benzyl alcohol, it

ignores the portions of the specification providing an aromatic content of mineral spirits. Therefore, SCS's own logic is internally inconsistent. ECF No. 41 at 11 (arguing that the definition of mineral spirits must contain no less than 0.2 wt % aromatic content despite the patent stating that the mineral spirits have an aromatic content of as high as less than 10 wt % and as low as less than 0.1 wt %); ECF No. 43-2 at 4:51–53 (noting that mineral spirits typical have a maximum content of 25% aromatic hydrocarbons). In other words, SCS attempts to impute limitations from the '921 specification when it wants to narrow construction of a term (*e.g.*, for the "about ## wt%" terms) but ignores the specification when the specification provides information that encompasses SCS's infringement (*e.g.*, aromatic content).

Third, even while attempting to impute restrictions from the specification as SCS proposes in violation of *Phillips*, SCS ignores parts of the '921 patent stating that in other aspects of the invention, the three components appear in different ranges. Specifically, mineral spirits are listed as being as high as "about 25 wt % to about 65 wt %" to "about 25 wt % to about 35 wt %." ECF No. 43-2 at 5:58–6:5. Diisopropylbenzene is listed as being present in a range from "about 10 wt % to about 50 wt %" to "about 10 wt % to about 20 wt %." ECF No. 43-2 at 6:60–7:6. Benzyl alcohol is listed as being present in a range from "about 5 wt % to about 35 wt %" to "about 25 wt % to about 35 wt %." ECF No. 43-2 at 7:43–52. SCS does not account for how its arbitrary +/- 0.5 wt % proposal comports with these ranges, when the bottom and top of the ranges are not listed in the specific points SCS cites. To a person of ordinary skill in the art, simply because a value is listed sequentially (*e.g.*, 48 wt %, 49 wt %, 50 wt %), it does not mean that the value *must* mean +/- 0.5 wt %. The terms have different meanings with different ranges. *See* Ex. 16 at 83:5–85:14 ("And so you cannot say just because it says 48 percent and then 49 percent and then 50 percent, the range has to be plus or minus .5 percent. Even practically, it's

not possible. . . . So, for instance, if you say about 40 percent and about 38 percent, they could overlap; but that does not mean that about 40 percent means between the [39.5] percent and 40.5 percent, et cetera, which is what SCS is claiming.”).

Finally, the specification, facts, and case law confirm a POSITA here would understand the disputed terms to have their plain and ordinary meaning without the need for any further construction. The ’921 patent specification confirms that “about” means “approximately.” ECF No. 43-2 at 4:14–15. And a POSITA would understand that there is some tolerance associated with the different “about” terms, which would not require additional construction because the antecedent “about” would convey to a POSITA the definition of the component it is pointing to. *Id.* For example, a larger weight percent component that is a carrier solvent like mineral spirits may have a larger tolerance (up to +/- ten percent), and a smaller weight percent component that has a functional duty in the mixture like benzyl alcohol may have a smaller tolerance (up to + five percent and – three percent). Ex. 16 at 89:13–20; 98:14-21; 125:1–16; *see also* ECF No. 43-1 at ¶¶ 108, 115, 122. SCS’s own documents confirm that its understanding of weight percentages for formulations can have variability and flexibility larger than +/- 0.5 wt %. ECF No. 43 at 24-25; ECF No. 43-12 (SCS_00000712). This understanding is consistent with the weight of case law confirming that “about” need only be construed to its plain and ordinary meaning. ECF No. 43 at 23 n.6 (collecting cases construing “about” to have its plain and ordinary meaning of approximately or not requiring further construction). This is entirely consistent with a POSITA’s understanding. Ex. 16 at 125:1–16.

## V. SCS Makes No Indefiniteness Argument

While SCS proposes that “about 49 wt %,” “about 28 wt %,” and “about 20 wt %” are alternatively “indefinite,” it has provided no support or argument for this position, likely because of the high clear and convincing burden, lack of evidence, and lack of legal support for such an

argument. *Britax Child Safety, Inc. v. Nuna International B.V.*, No. 17-cv-2724, 2019 WL 7161687, at *13–15 (E.D. Pa. Dec. 23, 2019) (collecting cases declining to determine indefiniteness at the claim construction phase due to the high burden of proof and an indefiniteness ruling's dispositive effect).

## VI. Conclusion

For the foregoing reasons, the Court should adopt NSX's constructions, reject SCS's constructions, and decline to find the '921 patent claims indefinite.

Dated: January 23, 2026

Respectfully submitted,

*/s/ Samhitha Medatia*
Samhitha Medatia
*(pro hac vice)*
BALLARD SPAHR LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (678) 420-9300
Fax: (678) 420-9301
medatias@ballardspahr.com

D. Brian Shortell, Ph.D.
*(pro hac vice)*
BALLARD SPAHR LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (678) 420-9300
Fax: (678) 420-9301
shortellb@ballardspahr.com

Noah S. Robbins
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
robbinsn@ballardspahr.com

*Counsel for Plaintiff and Counterclaim-Defendant NSX Operating Co., LLC*

**CERTIFICATE OF SERVICE**

I, Samhitha Medatia, hereby certify that, on this day, *Plaintiff NSX Operating Co., LLC's Responsive Claim Construction Brief*, and accompanying documents, was served, via electronic service, to:

John L. North
(*pro hac vice*)
TAYLOR DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
jnorth@taylorduma.com

Chad Kaffer
PA Bar Number: 326369
Practus, LLP
PO Box 44
Sewickley, PA 15143
chad.kaffer@practus.com

Dated: January 23, 2026

*/s/ Samhitha Medatia*
Samhitha Medatia
*(pro hac vice)*
BALLARD SPAHR LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (678) 420-9300
Fax: (678) 420-9301
medatias@ballardspahr.com

*Counsel for Plaintiff and Counterclaim-Defendant NSX Operating Co., LLC*